```
STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                        :
In re: COUDERT BROTHERS LLP,            :
                Debtors.                :
                                        :
--------------------------------------- :      09 CIV. 5047 (DLC)
                                        :
DEVELOPMENT SPECIALISTS, INC., in its   :        OPINION & ORDER
capacity as Plan Administrator for      :
Coudert Brothers LLP,                   :
                                        :
                Plaintiff-Appellant     :
                                        :
        -v-                             :
                                        :
1114 6TH AVENUE CO. LLC, f/k/a, 1114    :
TRIZECHAHN-SWIG, L.L.C.                 :
                Defendant-Appellee.     :
                                        :
--------------------------------------- X
```

Appearances:

For Appellant:
J. Joseph Bainton
John G. McCarthy
Smith, Gambrell & Russell
250 Park Ave., Suite 1900
New York, NY 10177

For Appellee:
Charles E. Boulbol
Law Office of Charles E. Boulbol
26 Broadway 17th Fl.
New York, NY 10004

DENISE COTE, District Judge:

     This appeal from an order of the bankruptcy court raises

the issue of when an amendment to a lease and the lease itself

should be considered a single contract.  Having assumed a lease

while in bankruptcy, the debtor seeks to avoid the obligations

under the lease amendment by arguing that the lease amendment
was a separate (and unassumed) contract.  The bankruptcy court
rejected its argument, and the bankruptcy court's dismissal of
the avoidance action is affirmed.

BACKGROUND

     The appellant is Development Specialists, plan
administrator ("Appellant") for debtor Coudert Brothers LLP
("Coudert"), an international law firm.  The appellee is 1114
6th Avenue Co. LLC f/k/a 1114 TrizecHahn-Swig LLC ("Landlord"),
a company that owns the building at 1114 6th Avenue (the "Grace
Building").

     On February 26, 1992, Coudert entered into a lease
agreement with the Landlord's predecessor-in-interest covering
the entire fourth, thirty-seventh, and fortieth through forty-
fifth floors of the Grace Building for a term expiring on May
30, 2013.[1]  Coudert occupied portions of its space, and subleased
the remainder to various tenants.

     On September 23, 2005, the Landlord and Coudert executed an
agreement entitled "Amendment of Lease" ("Lease Amendment").
Pursuant to the Lease Amendment, on October 1, 2005, the entire
fourth, thirty-seventh, fortieth, forty-second, forty-third, and
forty-fourth floors, as well as portions of the forty-first and
forty-fifth floors were surrendered to the Landlord.  On

---

[1] The Landlord bought the Grace Building in 1997.

December 31, 2006, the remainder of the forty-first floor was to be surrendered; and the expiration date on the remainder of the forty-fifth floor was amended to be June 30, 2008.  As a condition of Coudert surrendering the forth, and forty-second through forty-fourth floors, the Landlord agreed to enter into a direct lease with Baker & McKenzie ("Baker") for those floors; Baker directly paid the Landlord $4.9 million and made "certain payments" to Coudert in connection with this provision.  The Lease Amendment also provided for, inter alia, a reduction of Coudert's rent and the return of the $1 million letter of credit Coudert had given the Landlord as a security deposit.  In addition, the space Coudert had been subleasing to tenants was assigned back to the Landlord.  In exchange for entering this agreement, Coudert received $8.9 million.

On September 22, 2006, a year after executing the Lease Amendment, Coudert filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On April 23, 2007, Coudert filed an application seeking authorization from the United States Bankruptcy Court for the Southern District of New York to assume and assign the remaining portions of the Lease.  By an order of November 8, 2007 ("Assumption Order"), the bankruptcy court authorized Coudert to assume the remaining portion of the Lease (for the forty-fifth floor) and assign it to the law firm Teitler & Teitler ("Teitler"), which had been a subtenant of

Coudert's.   The Assumption Order provides that the assumption

and assignment of the Lease was

> Free and clear of (i) all liens . . ., (ii) all
> claims . . . demands, liabilities or restrictions of
> any kind, including without limitation, rights that
> purport to give any party a right or option to
> effect any forfeiture, modification or termination
> of the interest of any of the Debtor or Teitler, as
> the case may be, in the New York Lease,[2] and (iii)
> all taxes, claims or liabilities accruing during or
> relating to a period prior to April 30, 2007
>
> . . . .
>
> All defaults, claims or other obligations of the
> Debtor arising or accruing prior to April 30, 2007
> under the New York Lease, if any, shall be deemed
> cured and satisfied by the Debtor, by the payment of
> the Cure Amount to Landlord.

On September 19, 2008, the Appellant filed a complaint in

the bankruptcy court commencing an adversary proceeding against

the Landlord.   In its complaint, the Appellant sought to avoid

and recover Coudert's transfers of space under the Lease

Amendment.   The Appellant asserted that Coudert had not received

reasonably equivalent value or fair consideration for its

transfers -- it claims Coudert should have received $10 million

more than it did -- and that the Lease Amendment was made at a

time when Coudert was insolvent.

On December 1, 2008, the Landlord moved to dismiss the

complaint pursuant to Fed. R. Civ. P. 12(b)(6).   United States

Bankruptcy Judge for the Southern District of New York Robert

---

[2] This Opinion refers to the New York Lease as the Lease.

Drain heard oral argument on this motion on February 4, granted

the Landlord's motion to dismiss in a March 5 ruling from the

bench, and entered an Order granting the Landlord's motion to

dismiss on April 20.

At the February 4 oral argument, Judge Drain heard, <u>inter</u>

<u>alia</u>, parties' arguments about whether the Lease Amendment was a

separate contract and therefore severable from the Lease that

the Appellant admits it had assumed.  Citing the provisions of

the Lease Amendment that referred to Baker's rights and

obligations, and the return of the security deposit, Judge Drain

said "it seemed to me there was more going on in the document

than just leaving those floors" that Coudert surrendered.

Before the March 5 conference, Judge Drain reviewed the

Lease and Lease Amendment.[3]  At the conference, he noted that the

Lease Amendment provided for the partial surrender of Coudert's

space, a modification of rent, the return or termination of

Coudert's subleases, the return of part of Coudert's security

deposit, and various payments.  Judge Drain found the Lease

Amendment to be a modification of the Lease, and not a separate

agreement that could be severed.  He found that the Appellant's

---

[3] Appellant contends that the Lease "was never made part of the
record in the underlying Adversary Proceeding."  Yet, Judge
Drain referred at the March 5 hearing to "my review of the lease
modification and the underlying lease (which again, I can
consider and should consider in connection with the motion to
dismiss. . .)."

effort to avoid the surrender of space prescribed in the Lease

Amendment was barred because, pursuant to the Assumption Order,

Coudert had previously assumed the Lease as it was modified by

the Lease Amendment.  Moreover, Judge Drain found that since

Coudert's attempt to avoid the terms of the Lease Amendment was

based upon a position that was contrary to Coudert's position

when it applied for and obtained the Assumption Order, Coudert's

avoidance action was also precluded under the doctrine of

judicial estoppel.

The Appellant filed this timely appeal on April 29, 2009.

The appeal became fully briefed on July 6, 2009.

DISCUSSION

District courts are vested with appellate jurisdiction over

bankruptcy court rulings pursuant to 28 U.S.C. § 158(a), and may

"affirm, modify, or reverse a bankruptcy judge's judgment, order

or decree."  Fed R. Bankr. P. 8013.  On appeal, the legal

conclusions of the bankruptcy court are reviewed de novo and the

findings of fact are reversed only when they are "clearly

erroneous."  Id.; In re Tender Loving Care Health Svcs., Inc.,

562 F.3d 158, 161 (2d Cir. 2009).  While the bankruptcy court's

findings of fact are not conclusive on appeal, "the party that

seeks to overturn them bears a heavy burden."  H & C Dev. Group,

Inc. v. Miner (In re Miner), 229 B.R. 561, 565 (2d Cir. 1999).

The reviewing court must be left with a "definite and firm

conviction" that a mistake has been made.  Ortega v. Duncan, 333
F.3d 102, 107 (2d Cir. 2003) (citation omitted).  Mixed
questions of law and fact are reviewed "either de novo or under
the clearly erroneous standard depending on whether the question
is predominantly legal or factual."  Italian Colors Rest. v. Am.
Express Travel Related Servs. Co. (In re Am. Express Merchants'
Litig.), 554 F.3d 300, 316 n.11 (2d Cir. 2009) (citation
omitted).

        The Bankruptcy Code allows a debtor to renege on a
contractual obligation to transfer interests if the transfer was
fraudulent.  Section 548 provides that any obligation to
transfer interests may be avoided "if the debtor . . . received
less than a reasonably equivalent value in exchange for such
transfer or obligation; and was insolvent on the date that such
transfer was made or such obligation was incurred."  11 U.S.C. §
548; accord In re Red Dot Scenic, Inc., 351 F.3d 57, 58 (2d Cir.
2003) (per curiam).

        But if a debtor in bankruptcy assumes a contract, it must
honor its obligations under that contract.  Section 365 of the
Bankruptcy Code provides that "the trustee, subject to the
court's approval, may assume or reject any executory contract or
unexpired lease of the debtor" and must "provide[] adequate
assurance of future performance under such contract or lease."
11 U.S.C. § 365.  See also 11 U.S.C. § 1107 (giving equivalent

powers and rights to debtors-in-possession).  Accord In re

Ionosphere Clubs, Inc., 85 F.3d 992, 998-99 (2d Cir. 1996).

"[C]ontract assumption is an important re-organizational tool."

In re Wireless Data, Inc., 547 F.3d 484, 488 (2d Cir. 2008).

> The main purpose of Section 365 is to allow a debtor
> to reject executory contracts in order to relieve
> the estate of burdensome obligations while at the
> same time providing a means whereby a debtor can
> force others to continue to do business with it when
> the bankruptcy filing might otherwise make them
> reluctant to do so.

In re Chateaugay Corp., 10 F.3d 944, 954-55 (2d Cir. 1993)

(citation omitted).  The debtor's assumption of a contract

entitles all parties to the contract to the rights and

obligations embodied therein.  See In re TSW Stores of Nanuet,

Inc., 34 B.R. 299, 304 (Bank. S.D.N.Y. 1983) ("Assumption

carries with it all of the burdens as well as the benefits of

the contract.  The contract must be rejected in its entirety, or

not at all.") (emphasis in original) (citation omitted).  "Where

a debtor has been permitted by the bankruptcy court to assume a

contract pursuant to § 365, equitable estoppel principles may be

applied by the court to deny the debtor permission to escape its

obligation to perform the contract it assumed."  In re

Ionosphere Clubs, 85 F.3d at 1000.  If a debtor attempts to

avoid as fraudulent a transfer that was made pursuant to a

contract the debtor has assumed under Section 365, it is

appropriate to dismiss the avoidance action at the pleading

stage.   In re Network Access Solutions, Corp., 330 B.R. 67, 75-

77 (Bankr. D. Del. 2005); In re Vision Metals, Inc., 325 B.R.

138, 145-47 (Bankr. D. Del. 2005).

A central issue in this case is whether the Lease and Lease

Amendment are one entire contract that Coudert assumed, or two

severable contracts, only the former of which was assumed.  "For

purposes of section 365, interpretation of the legal status of

lease agreements is governed by state law."  In re S.E. Nichols

Inc., 120 B.R. 745, 748 (Bankr. S.D.N.Y. 1990).  There is no

dispute that New York law governs the contract at issue, given

the interests of the parties and the location of the Grace

Building.  See Schwartz v. Liberty Mut. Ins. Co., 539 F.3d 135,

151-52 (2d Cir. 2008).  Under New York law, "[w]here a lease is

subsequently modified, the lease and the modification must be

taken together and construed as one contract."  In re S.E.

Nichols Inc., 120 B.R. at 748.  To determine whether a

particular lease has been modified by a subsequent agreement or,

alternatively, the subsequent agreement constitutes a separate a

contract, courts must look at the substance of the lease rather

than at its form or title.  Id.

> As a general rule, a contract is entire when by its
> terms, nature, and purpose, it contemplates and
> intends that each and all of its parts and the
> consideration therefor shall be common each to the
> other and interdependent.  On the other hand, the
> contract is considered severable and divisible when

         by its terms, nature, and purpose, it is susceptible
         of division and apportionment.

First Sav. & Loan Ass'n of Jersey City, N. J. v. American Home

Assur. Co., 29 N.Y.2d 297, 299-300 (N.Y. 1971).  A subsequent

agreement modifies a lease if "any original provision of the

earlier agreement was altered, changed, deleted, or cancelled by

the subsequent agreement."  In re S.E. Nichols Inc., 120 B.R. at

749 (citation omitted).  "Typically, legitimate lease

modifications will include provisions reducing rent, or

surrendering unexpired terms."  Id. at 748 (citation omitted).

"If the original agreement was altered, then New York law

mandates characterization of the two agreements as one contract

incapable of separate assumption and rejection under the Code."

Id. at 749.  "If a lease and its modifications are

straightforward and unambiguous, the interpretation of the

entire contract is a question of law for the court to make."

350 East 30th Parking, Ltd. v. Bd. of Mgrs. of 350 Condominium,

280 A.D.2d 284, 287 (N.Y. App. Div. 1st Dept. 2001).

    Applying these principles, the bankruptcy court correctly

determined that the Lease and Lease Amendment constitute a

single contract, and that the Appellant's assumption of the

Lease must also be deemed an assumption of the Lease Amendment.

The Lease Amendment altered several terms of the Lease,

permitting Coudert to, inter alia, surrender space, change the

term of the lease on its remaining space, reduce its rental
payments, recover its security deposit, assign its subleased
space to the Landlord, and collect payment from Baker.  These
modifications of the Lease through the execution of the Lease
Amendment require the two documents to be construed as a single
contract.

Relying on Nichols, 120 B.R. at 745, the Appellant argues
that the Lease and Lease Amendment are two separate contracts,
with the Lease Amendment being a contract that does nothing more
than reduce Coudert's share of space and rent pro rata.  The
Appellant argues that under the Assumption Order it assumed only
one of the contracts -- the Lease, and not the Lease Amendment
with its transfer provisions.

Nichols does not help the Appellant.  In that case, the
debtor had a lease for the second and third floors of a
building.  A lease amendment added the fourth floor and
increased the overall rent.  The bankruptcy court did not
determine whether the amendment constituted a modification or a
separate lease, because it could not assess whether the marginal
increase in rent was pro rata, and therefore ascribed solely to
the fourth floor.  The court said that if the amendment merely
included the additional subject matter of the fourth floor and
did not substantively change provisions in the underlying lease

the amendment would count as a severable contract.  120 B.R. at

749-51.

     As already described, the Lease Amendment in this case went

far beyond simply adding subject matters to the underlying

lease.  It made a number of changes to the Lease, including

surrendering Coudert's unexpired rights to space, changing the

term of the lease in the remaining space, and reducing the rent.

These changes fall squarely within Nichols's examples of

"legitimate lease modifications" -- "provisions reducing rent,

or surrendering unexpired terms."  Id. at 748.  In addition, the

Lease Amendment returned Coudert's security deposit, assigned

Coudert's subleases to the Landlord, and created new obligations

between the Landlord, Baker, and Coudert.

     The Appellant next argues that the Lease Amendment's

adjustment to Coudert's rent did not actually modify the

original terms of the Lease because it did not change the rent

per square foot.  The Appellant argues that the bankruptcy court

erred by "ignoring the pro rata nature of the changes to the

terms of the New York Lease."  It is unnecessary to determine

whether the Lease Amendment contained a "modification of rent."

Even if the Lease Amendment did not change the rent per square

foot, its other provisions relating to Coudert's surrender of

space, the Landlord's return of the security deposit, the

assignment of subleased space to the Landlord, and obligations

involving Baker clearly modify the original Lease terms.  The

two instruments therefore comprise one contract, which the

Appellant assumed under the Assumption Order.[4]

Finally, the Appellant does not contend that it should be

allowed under Section 548 to avoid the terms of a contract that

it has assumed under Section 365.  Nor does it dispute that it

assumed the Lease under Section 365.  Since the Lease and Lease

Amendment constituted one entire contract, which the Appellant

assumed, the Appellant cannot now avoid the transfers it made

pursuant to the Lease Amendment.  The bankruptcy court's

dismissal of the Appellant's avoidance action was proper.

CONCLUSION

The bankruptcy court's March 5, 2009 ruling and April 20,

2009 Order granting the Landlord's motion to dismiss the Plan

Administrator-Appellant's complaint in this adversary proceeding

is affirmed.  The appeal is dismissed.

SO ORDERED:

Dated:     New York, New York
           September 4, 2009

_____
           DENISE COTE
United States District Judge

---

[4] Having considered these and Appellant's other arguments, and
finding them to be without merit, it is unnecessary to reach the
alternative grounds on which the bankruptcy court based its
ruling.

13